AO 91 (Rev. 11/11) Criminal Complaint



FILED
10/5/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> JAMIE HERNANDEZ | CASE NUMBER: 25CR639 |

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about October 4, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 111(a)(1) | forcibly assaulted, resisted, opposed, impeded, and interfered with a person designated in Title 18, United States Code, Section 1114, namely, an officer and employee of the United States, while engaged in the performance of their official duties, and such acts involved physical contact with the victim of that assault |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_Nicholas J. Ilg /by HKM_
NICHOLAS J. ILG
Special Agent, Homeland Security Investigations (HSI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: October 5, 2025    at 2:23 p.m.        _Heather K. McShain_
                                             *Judge's signature*

City and state: Chicago, Illinois            HEATHER K. MCSHAIN, U.S. Magistrate Judge
                                             *Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

### I. Introduction

I, NICHOLAS J. ILG, being duly sworn, state as follows:

1. I am a Special Agent with the Homeland Security Investigations (HSI) and have been so employed for 11 years. My current responsibilities include the investigation of crimes primarily involving violations of immigration and customs laws. I have also investigated cases involving assaults against officers of the United States.

2. This affidavit is submitted in support of a criminal complaint alleging that Jamie Hernandez ("HERNANDEZ") has violated Title 18, United States Code, Section 111(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, including information provided to me by the victim officer of the United States, a law enforcement report, and my training and experience.

## II. Summary of Probable Cause

4. As detailed further below, on October 4, 2025, HERNANDEZ participated in a protest directed at immigration enforcement officers near the area of South Kedzie Avenue between 38th Street and Pershing Road (also known as 39th Street) in Chicago. A United States Border Patrol ("USBP") agent ("Victim 1") instructed HERNANDEZ to clear the Kedzie Avenue roadway. HERNANDEZ refused to move from the roadway. When Victim 1 approached HERNANDEZ, HERNANDEZ reached out and pushed Victim 1, making contact with Victim 1's ballistics vest. Victim 1 raised his hand attempting to create distance between Victim 1 and HERNANDEZ, and HERNANDEZ slapped Victim 1's raised arm.

## III. Facts Supporting Probable Cause

5. According to law enforcement, at approximately 10:30 a.m., near the area of South Kedzie Avenue between 38th Street and Pershing Road in Chicago, there was an unrelated encounter between a protestor of ongoing immigration enforcement operations being conducted by law enforcement authorities in the Northern District of Illinois and law enforcement officers. Following the encounter, approximately 20 to 30 protestors began to surround law enforcement officers, and more protestors continued to arrive on scene.

6. According to Victim 1, Victim 1 serves as a Border Patrol Agent with the USBP, a federal agency. On October 4, 2025, Victim 1 was on duty with USBP.[1] At

---

[1] According to Victim 1, on October 4, 2025, Victim 1 was wearing a USBP uniform, which included a USBP shoulder insignia, a ballistics vest bearing the word "POLICE" in yellow

2

approximately 12:00 p.m., Victim 1 was assigned to assist with crowd control of protestors in the area of South Kedzie Street between 38th Street and Pershing Street. Specifically, Victim 1 was assigned to establish and hold a northern perimeter of protestors on Kedzie Street, north of Pershing Street.

7. According to Victim 1, at approximately 12:30 p.m., Victim 1 was instructing protestors to move from the Kedzie Street roadway, stating, "Please move back," and "Move back." As Victim 1 instructed the group of protestors, Victim 1 observed one of the protestors, later identified as HERNANDEZ (via a comparison to a law enforcement database photograph), who was standing approximately 10 to 15 feet from Victim 1, plant his feet approximately a shoulder-width apart, clench his hands into fists below his waist, and square his shoulders, while making eye contact with Victim 1. Victim 1 approached HERNANDEZ and instructed HERNANDEZ to "get back" and "move to the street." In response, HERNANDEZ loudly stated something to the effect of, "No, I'm not gonna move," and HERNANDEZ did not move. Victim 1 then moved closer to HERNANDEZ. When Victim 1 was within approximately three to five feet of HERNANDEZ, HERNANDEZ reached out and pushed Victim 1, making contact with Victim 1's ballistics vest. According to Victim 1, Victim 1 raised his hand in an attempt to create distance between Victim 1 and HERNANDEZ. HERNANDEZ then slapped Victim 1's raised arm. In response, Victim 1 attempted to strike HERNANDEZ but did not make contact with

---

lettering, and a USBP badge. Victim 1 was also wearing a gas mask and a pistol belt that held handcuffs, a service pistol, and pistol magazines.

HERNANDEZ. HERNANDEZ shouted at Victim 1, stating something along the lines of, "Fuck you!," and "You guys are stupid bitches!" Victim 1 observed that HERNANDEZ was clenching his fists and was attempting to move to the rear of Victim 1.

8. According to Victim 1, at this point, Victim 1's partner, another Border Patrol Agent ("BPA 2"), attempted to assist Victim 1 by attempting to restrain HERNANDEZ. BPA 2 placed his hands on HERNANDEZ's arm and shoulder and caught HERNANDEZ's shirt. HERNANDEZ slipped from BPA 2's grasp and fell to the ground, losing his shirt in the encounter. While HERNANDEZ was on the ground, Victim 1 attempted to launch a pepper spray projectile, but Victim 1's pepper spray launcher did not function. At this point, approximately 10 to 15 additional protestors quickly advanced toward Victim 1, BPA 2, and other border patrol agents. According to Victim 1, HERNANDEZ rose to his feet and engaged in a "boxer's stance," widened his stance, raised his hands into fists, and squared his shoulders in the direction of Victim 1. HERNANDEZ continued to shout something along the lines of, "fuck you, stupid bitches."

9. According to Victim 1, at this point, the group of protestors in Victim 1 and BPA 2's vicinity grew. Victim 1 observed HERNANDEZ move off the Kedzie Avenue roadway and disappear. Due to the growing number of protestors, Victim 1 did not pursue HERNANDEZ at that time.

10. According to Victim 1, Victim 1 and other border patrol agents then worked to establish a perimeter by placing orange construction barrels tethered by yellow construction tape across the Kedzie Avenue roadway.

11. According to Victim 1, at approximately 1:30 p.m., approximately 30 to 45 minutes after his initial encounter with HERNANDEZ, HERNANDEZ returned, wearing a new shirt. HERNANDEZ approached Victim 1, stood approximately 10 to 15 feet from Victim 1, pointed his finger at Victim 1, and loudly stated words to the effect of, "I remember you…you ready for round two motherfucker…I'm going to beat your ass."

12. According to Victim 1, at this time, Victim 1 received a radio communication that the Kedzie Avenue roadway was to be cleared of protestors to allow federal law enforcement vehicles to depart the scene. These federal law enforcement vehicles did not display police markings, but officers had activated their red and blue emergency lights. Approximately 10 protestors moved into the Kedzie Avenue roadway and blocked the federal law enforcement vehicles by placing their bodies in front of the vehicles while pushing and striking the vehicles. Victim 1 observed that HERNANDEZ was one of the protestors attempting to block the movement of the law enforcement vehicles.

13. According to Victim 1, at this time, Victim 1 was instructed by other border patrol agents to move the protestors away from the law enforcement vehicles. Victim 1 issued loud, verbal commands, and instructed protestors to move away from the vehicles. When the protestors did not move away from the vehicles, Victim 1

deployed a hand-held canister, which emitted a chemical irritant gas. The canister landed near the feet of HERNANDEZ. Victim 1 observed HERNANDEZ step toward the canister and kick the canister in the direction of Victim 1. Victim 1 and other nearby border patrol agents moved toward HERNANDEZ and Victim 1 again observed HERNANDEZ engage in a "boxer's stance."

14. According to Victim 1, at approximately 1:50 p.m., Victim 1 and other border patrol agents attempted to restrain HERNANDEZ by forcing him to the ground, while instructing HERNANDEZ not to resist. The border patrol agents restrained HERNANDEZ and placed HERNANDEZ in handcuffs.

15. As part of the investigation, I also interviewed BPA 2 and reviewed a report authored by BPA 2. According to BPA 2, BPA 2 did not personally observe HERNANDEZ push Victim 1. BPA 2 did personally observe HERNANDEZ slap Victim 1's hand. According to BPA 2, BPA 2 reviewed BWC footage captured by Victim 1, including at and around the 12:30 p.m. timestamp on October 4, 2025. BPA 2 stated that, on Victim 1's BWC footage, he observed HERNANDEZ push Victim 1, which is consistent with Victim 1's account.

16. Victim 1, whom HERNANDEZ made physical contact with, is an "officer of the United States" within the meaning of Title 18, United States Code, Section 1114, in that he was serving as an agent of the USBP.

**IV. Conclusion**

17. Based on the above information, I submit that there is probable cause to believe that on October 4, 2025, HERNANDEZ forcibly assaulted, resisted, opposed,

impeded, and interfered with an officer of the United States, as designated in Title 18, United States Code, Section 1114, more specifically, a USBP agent, who was engaged in the performance of his official duties, and in doing so, HERNANDEZ made physical contact with the agent, all in violation of Title 18, United States Code, Section 111(a)(1).

FURTHER AFFIANT SAYETH NOT.

*Nicholas J. Ilg /by HKM*
NICHOLAS J. ILG
Special Agent, Homeland Security Investigations (HSI)

SWORN TO AND AFFIRMED by telephone October 5, 2025.

*Heather K. McShain*
Honorable HEATHER K. MCSHAIN
United States Magistrate Judge

7